Eric Daucher
Francisco Vazquez
**NORTON ROSE FULBRIGHT US LLP**
1301 Avenue of the Americas
New York, New York 10019
Telephone:     (212) 318-3000
Facsimile:      (212) 318-3400

*Counsel to the Petitioner*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------- x
In re:                                                                                  :
                                                                                             :     Chapter 15
                                                                                             :
NOVELION THERAPEUTICS INC.,                             :     Case No. 21-_____ (___)
                                                                                             :
         Debtor in a Foreign Proceeding.                   :
---------------------------------------------------------------- x

**PETITIONER'S VERIFIED PETITION UNDER CHAPTER 15
FOR RECOGNITION OF THE CANADIAN PROCEEDING
AND REQUEST FOR RELATED RELIEF**

Alvarez & Marsal Canada Inc., as the duly authorized foreign representative (the "Petitioner"), as defined by section 101(24) of title 11 of the United States Code (the "Bankruptcy Code"), of Novelion Therapeutics Inc. (the "Company"), through its United States counsel, Norton Rose Fulbright US LLP, respectfully submits this verified petition (the "Verified Petition") seeking (i) recognition of the Company's foreign proceeding commenced under the *Business Corporations Act*, S.B.C. 2002 c. 57 (the "BCBCA"), pending before the Supreme Court of British Columbia, Vancouver Registry (the "Canadian Court"), File No. S1913050 (the "Canadian Proceeding"), as a foreign main proceeding and (ii) related relief. In support thereof, the Petitioner respectfully states as follows:

**PRELIMINARY STATEMENT**

1.    The Company formerly operated as a British Columbia biopharmaceutical business dedicated to developing and commercializing treatments and therapies for individuals living with rare diseases. The Company is now in the final stages of a liquidation proceeding under the laws of British Columbia. The claims bar date established in the Canadian Proceeding has passed, and all creditor claims have been agreed and paid in full. All that remains is for the Company to distribute its remaining assets to shareholders in accordance with the governing BCBCA and complete a dissolution of the corporate entity.

2.    The Company's remaining principal asset consists of 2,498,050 American Depositary Receipts (the "ADRs") of Amryt Pharma plc ("Amryt")—which are described in greater detail below—for which Citibank N.A., New York Branch ("Citi NY"), acts as depositary. A significant majority of those ADRs are, pursuant to an order already entered by the Canadian Court, required to be distributed to the Company's shareholders. To enable Citi NY to act on that order, however, recognition of the Canadian Proceeding, including enforcement of the Canadian Court's distribution order in the United States, is necessary. Accordingly, after discussion with Citi NY, the Petitioner commenced this chapter 15 case and seeks an order substantially in the form of the proposed order annexed hereto as **Exhibit A** (the "Proposed Order") granting recognition to the Canadian Proceeding. By separate motion, the Petitioner, on behalf of the Company, has requested an order from this Court facilitating the transactions contemplated by the Interim Distribution Order (as defined below). The Petitioner understands that Citi NY does not oppose the relief sought herein or in that separate motion.

3.    The Petitioner, as the foreign representative of the Company, commenced this chapter 15 case by filing a petition (the "Petition") contemporaneously with, and accompanied

by, all certifications, statements, lists and documents required under chapter 15 of the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). As set forth below and in (i) the *Declaration of Kieran Siddall in Support of (A) Petitioner's Verified Petition Under Chapter 15 for Recognition of the Canadian Proceeding and Request for Related Relief, and (B) Motion for Provisional Relief* and (ii) the *Memorandum of Law in Support of (A) Petitioner's Verified Petition Under Chapter 15 for Recognition of the Canadian Proceeding and Request for Related Relief, and (B) Motion for Provisional Relief*, each of which was filed contemporaneously herewith:

(i) the Company duly commenced a foreign proceeding in Canada;

(ii) the Company's head office and "nerve center" is located in the City of Vancouver in British Columbia, Canada;

(iii) the Company is eligible to be a debtor under section 109(a) of the Bankruptcy Code;

(iv) the Petitioner is duly authorized to serve as the Company's foreign representative and to petition for relief under chapter 15 of the Bankruptcy Code in connection with the Canadian Proceeding pending in Canada; and

(v) the Petitioner is entitled to the relief requested herein.

4. On November 18, 2019, the Company commenced the Canadian Proceeding after determining that liquidation was in the best interest of the Company and its stakeholders, and obtaining approval of the liquidation from the requisite majority of its shareholders. Indeed, the Company concluded that liquidation was the only viable strategic option after the Aegerion Recapitalization (as defined and discussed below) given that the Company had no material ongoing business operations or sources of revenue.

5. Upon the Company's request, the Canadian Court issued an order dated January 9, 2020 (the "Liquidation Order"), among other things, approving the appointment of the Petitioner as the liquidator of the Company. A true and correct copy of the Liquidation Order is

annexed hereto as **Exhibit B**. Pursuant to the Liquidation Order, the Petitioner was entrusted with the liquidation of the Company and granted all of the powers and authorities provided to a liquidator under the BCBCA. Moreover, pursuant to the Liquidation Order, the Canadian Court authorized the Petitioner to apply to any court for the "recognition of [the Liquidation Order] and for assistance in carrying out the terms of this Order." *See* Liquidation Order ¶ 32. Indeed, the Canadian Court expressly requested this Court's assistance with respect to the Liquidation Order and "to grant representative status" to the Petitioner. *See* Liquidation Order ¶ 31.

6. As detailed below and in the Proposed Order, the Petitioner requests all relief afforded automatically upon recognition of a foreign main proceeding pursuant to sections 1509 and 1520 of the Bankruptcy Code or, in the alternative, discretionary relief from this Court pursuant to section 1521 of the Bankruptcy Code, including confirming the Petitioner's authority to administer or realize and cause the distribution of the ADRs.

7. The Petition satisfies all of the requirements set forth in section 1515 of the Bankruptcy Code. In addition, the Company is eligible to be a debtor under section 109(a) of the Bankruptcy Code because the Company has property in the United States in the form of $25,000 in a non-interest bearing client trust account with Citi Private Bank in New York.

8. For the reasons described herein and in the Memorandum of Law, the Petitioner is entitled to entry of an order granting recognition to the Canadian Proceeding as a foreign main proceeding under chapter 15 of the Bankruptcy Code, as well as related relief under sections 1507, 1509, and 1521 of the Bankruptcy Code. In addition, contemporaneously herewith the Petitioner has filed a Motion for Provisional Relief Pursuant to Section 1519 of the Bankruptcy Code (the "Provisional Relief Motion").

**JURISDICTION AND VENUE**

9. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, dated January 31, 2012. The Petitioner and the Company confirm their consent, pursuant to Bankruptcy Rule 7008, to the entry of a final order by the Court in connection with this Verified Petition to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

10. The Petitioner properly commenced this chapter 15 case pursuant to sections 1504 and 1509 of the Bankruptcy Code by filing the Petition under section 1515 of the Bankruptcy Code.

11. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

12. Venue is proper before the Court pursuant to 28 U.S.C. § 1410, as the Company has assets in the form of $25,000 in a non-interest bearing client trust account with Citi Private Bank in New York.

13. The statutory predicates for the relief requested in this Verified Petition are sections 1502, 1504, 1507, 1515, 1517, 1520, and 1521 of the Bankruptcy Code.

**BACKGROUND**

**I.  Company Background and Events Leading to the Filing of the Canadian Proceeding**

14. The Company is a corporation formed under the BCBCA. Its registered office is located at Commerce Place, 400 Burrard Street, Suite 1680, Vancouver, British Columbia, Canada V6C 3A6. Until delisting on October 9, 2019, the Company's shares were listed on the NASDAQ Global Select Market under the ticker "NVLN."

15. On November 29, 2016, Aegerion Pharmaceuticals, Inc. ("Aegerion"), became a wholly-owned subsidiary of the Company as a result of a merger transaction. Thereafter, through Aegerion, the Company operated as a biopharmaceutical business dedicated to developing and commercializing treatments and therapies for individuals living with rare diseases.

16. At the time of the merger, Aegerion had a portfolio of therapies, but was also facing $300 million in funded debt. Consequently, the Company agreed to make certain loans to Aegerion to fund its immediate financial needs. However, the Company's loans proved to be insufficient to address Aegerion's continuing financial challenges.

17. The Company conducted a broad and public review of strategic alternatives involving the Company as a whole, including a merger, asset sale, comprehensive restructuring, or other business combination transaction. Despite outreach by the Company's financial advisors to more than 50 parties, no viable potential buyer or partner emerged or was identified that was interested in such a transaction involving the Company as a whole.

18. On May 20, 2019, Aegerion, Amryt Pharma Plc ("Amryt") (a third party that also has a biopharmaceutical business), certain other parties, and Novelion entered into a restructuring support agreement, pursuant to which Amryt would acquire 100% of the equity interests in "reorganized" Aegerion (the "Aegerion Recapitalization"). Aside from its indirect interest in the operations of Aegerion, the Company had no material operations of its own at the time of the Aegerion Recapitalization.

19. To facilitate the Aegerion Recapitalization, Aegerion and its U.S. subsidiary Aegerion Pharmaceuticals Holdings, Inc. filed voluntary petitions seeking relief under Chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases") with the United States Bankruptcy Court

for the Southern District of New York (the "Bankruptcy Court").  On September 10, 2019, the Bankruptcy Court issued an order confirming Aegerion's chapter 11 plan, pursuant to which, among other things, (i) Amryt acquired 100% of the outstanding equity interests in Aegerion, and (ii) the Company received a distribution of approximately 8.9% of the equity in Amryt on a fully diluted basis (the "Amryt Equity") in the form of American Depositary Receipts, including the ADRs.  Each ADR represents five common shares of Amryt.  The ADRs are maintained by Citi NY, which is the depositary for Amryt's ADR program.

20.    After the consummation of the Aegerion Recapitalization, the Company remained a publicly traded company, complete with the substantial accounting, legal, and other expenses typical for a public company.  However, the Company was left with limited assets and resources, and minimal remaining sources of revenue.  Indeed, after the consummation of the Aegerion Recapitalization, the Company's remaining material assets were limited to the ADRs, certain contingent royalties and revenue streams from previously divested technology and products, and cash on hand.  For those reasons, among others, the Company concluded that liquidation was the best option, if not the only one, available to the Company, and in the best interest of the Company's stakeholders.

## II.    The Canadian Proceeding

21.    On November 18, 2019, the Company commenced the Canadian Proceeding by filing a petition with the Canadian Court pursuant to Section 325 of the BCBCA.

22.    On January 9, 2020, the Canadian Court issued the Liquidation Order, pursuant to which the Petitioner was approved as the liquidator of the Company and granted all of the powers and authorities provided to a liquidator under the BCBCA.  In addition, the Canadian Court directed that the Company's liquidation be carried out in accordance with the terms of the

Company's Plan of Liquidation and Distribution (the "Liquidation Plan"), which the Company had developed in consultation with the Petitioner prior to commencing the Canadian Proceeding. A true and correct copy of the Liquidation Plan is attached hereto as **Exhibit C**.

23. Pursuant to the Liquidation Plan, among other things, the Petitioner, on behalf of the Company, was entrusted with oversight of the Company's assets and authorized to cause the Company to make distributions of the Company's assets to creditors, and, after all obligations of the Company and liquidation expenses are paid, to distribute, on behalf of the Company, any remaining assets or cash to shareholders ratably in accordance with their rights and interests in the Company. *See* Liquidation Order ¶ 3. Because the company is solvent, the Liquidation Plan contemplates one or more distributions to the Company's shareholders.

24. The Liquidation Plan further provides that the Petitioner, on behalf of the Company, will file an application for an order approving the wind-up and dissolution of the Company. Following receipt of the Canadian Court's order approving dissolution, the Petitioner, on behalf of the Company, is to file an application for dissolution of the Company with the British Columbia Registrar of Companies. Upon the Company's dissolution, the Petitioner will be discharged as liquidator of the Company.

25. The Liquidation Order also provides a broad moratorium staying all actions against the Company or affecting the business or the property of the Company without the written consent of the Petitioner or leave of the Canadian Court. *See* Liquidation Order ¶ 8.

26. Finally, through the Liquidation Order, the Canadian Court authorized the Petitioner to apply to any court for the "recognition of [the Liquidation Order] and for assistance in carrying out the terms of [the Liquidation] Order." *See* Liquidation Order ¶ 32. Indeed, the Canadian Court expressly requested this Court's assistance with respect to the Liquidation Order

and asked the Court "to grant representative status" to the Petitioner. *See* Liquidation Order ¶ 31.

### B. The Claims Process Order

27. Contemporaneously with entering the Liquidation Order and approving the Liquidation Plan, the Canadian Court entered an order (the "Claims Process Order") pursuant to which it approved a claims adjudication process (the "Claims Process"). A copy of the Claims Process Order is annexed hereto as **Exhibit D**. The Claims Process established certain procedures, including notice to creditors, to solicit, determine, and resolve any claims against the Company and its former directors and officers. In accordance with the Claims Process Order, the Petitioner was entrusted with administering the Claims Process. In that regard, the Petitioner delivered the notices required by the BCBCA, posted a notice of the Claims Process on the Petitioner's case website, and published a notice of the Claims Process twice in Canadian and United States news publications. The notice sent to known creditors as evidenced by the Company's books and records included the amount the Petitioner determined was owed by the Company based upon the Company's books and records. Pursuant to the Claims Process, the deadline for creditors to file proofs of claim or dispute the amount of their claims as determined by the Petitioner, as liquidator, was May 29, 2020. All claims against the Company have been agreed and fully paid. There are no pending objections to claims. Accordingly, it appears that the Claims Process has been duly concluded.

28. The Amryt Equity is the primary remaining material asset of the Company. The Petitioner expects that any value available to shareholders of the Company will consist almost entirely of the Amryt Equity or net proceeds therefrom, net of sales of the Amryt Equity that are

necessary to fund the Company's liabilities and cover its expenses, including expenses related to the liquidation.

29. In addition, as of the date hereof, the Company has property in the United States in the form of an interest in an undrawn retainer with Norton Rose Fulbright US LLP (the "Firm"), the Petitioner's United States counsel. In particular, the Company deposited $25,000 in a non-interest bearing client trust account with Citi Private Bank. in New York (the "Client Trust Account"). Such funds remain in the Client Trust Account as of the date hereof and are the property of the Company. Pursuant to the Petitioner's arrangements with their counsel, the Firm is only permitted to apply the funds in the Client Trust Account to outstanding invoiced amounts at the Petitioner's direction.

C. The Interim Distribution Order

30. The Liquidation Plan contemplates one or more distributions to the Company's shareholders. Prior to the commencement of the Canadian Proceeding, the Company was aiming to complete an initial distribution to shareholders in the fourth quarter of 2020.

31. A number of administrative steps remain to be completed before the Company can be finally dissolved. Consequently, the Petitioner cannot make a complete and final distribution to the Company's shareholders.

32. On December 9, 2020, the Petitioner requested authority to cause the Company to make an interim distribution of approximately 2.185 million of the ADRs (approximately 84.5% of the ADRs) to shareholders. By order dated December 16, 2020 (the "Interim Distribution Order"), the Canadian Court authorized the Petitioner to cause the Company to make such distribution. A true and correct copy of the Interim Distribution Order is annexed hereto as **Exhibit E**. The Interim Distribution Order, much like the Liquidation Order and the Claims

Process Order, expressly requested this Court's assistance in giving effect to the Interim Distribution Order and asked this Court "to grant representative status" to the Petitioner.[1]

33. The Petitioner, on behalf of the Company, has attempted to effectuate the distributions in accordance with the terms of the Interim Distribution Order, which expressly directs all persons, including transfer agents, custodians, and depositary bank,s to take all steps to complete the distribution. However, the Petitioner understands that the distribution cannot be completed until Citi NY, which acts as transfer agent for the ADRs in the United States, has received a United States court order confirming that the Interim Distribution Order is enforceable in the United States. Accordingly, the Petitioner filed this Petition and the Provisional Relief Motion to seek an order enforcing the Interim Distribution Order in the United States to provide Citi NY, and any other relevant party, with confirmation that the Distribution Order is enforceable in the United States.

34. Absent recognition of the Canadian Proceeding and enforcement of the Interim Distribution Order in the United States, the Petitioner will be without a viable path for ensuring that the distributions required by the Interim Distribution Order—and future distributions that are anticipated to be made under the Liquidation Plan—are completed.

**STATUTORY BASES FOR RECOGNITION OF CANADIAN PROCEEDING**

35. Chapter 15 of the Bankruptcy Code was designed to assist foreign representatives, like the Petitioner, in the performance of their duties. Chapter 15's objective is, among other

---

[1] Contemporaneously with the Petitioners' request for issuance of the Interim Distribution Order, the Petitioner also submitted the *First Report of the Liquidator* to provide the Canadian Court with information related to the conduct of the liquidation to that date. A true and correct copy of the *First Report of the Liquidator*, excluding the appendices thereto, is attached hereto as **Exhibit F**.

things, the "fair and efficient administration of cross-border insolvencies that protects the interests of all creditors, and other interested entities, including the debtor" and the "protection and maximization of the value of the debtor's assets." 11 U.S.C. § 1501(a)(3) and (a)(4). This Petition advances both goals by providing the Petitioner, acting as an officer of the Canadian Court, the assistance necessary to administer the Company's liquidation and to fulfill its obligation to cause the Company to distribute assets to the Company's stakeholders.

36.     As discussed in greater detail in the Memorandum of Law, the Petition satisfies all of the requirements set forth in section 1515 of the Bankruptcy Code. In addition, the Company is eligible to be a debtor under section 109(a) of the Bankruptcy Code because it has property in the United States in the form of $25,000 in the Client Trust Account in New York. Moreover, the relief requested herein is necessary and is appropriate under chapter 15 of the Bankruptcy Code. Granting recognition to the Canadian Proceeding in the United States is consistent with the goals of international cooperation and assistance to foreign courts that are embodied in Chapter 15 of the Bankruptcy Code.

## **RELIEF REQUESTED**

37.     The Petitioner, in its capacity as liquidator of the Company, the duly authorized foreign representative, and an officer of the Canadian Court in the Canadian Proceeding, seeks entry of the Proposed Order granting the following relief:

(i) recognition of the Canadian Proceeding in respect of the Company as a foreign main proceeding, as defined in section 1502(4) of the Bankruptcy Code or, in the alternative, as a foreign nonmain proceeding as defined in section 1502(5) of the Bankruptcy Code;

(ii) all relief afforded to foreign representatives and foreign debtors in a foreign main proceeding automatically upon recognition pursuant to section 1520 of the Bankruptcy Code and, as applicable, discretionary relief pursuant to section 1521 of the Bankruptcy Code;

(iii) enforcing the Interim Distribution Order in the United States, and directing Citi NY and all other entities to take any and all lawful actions necessary to give effect to the Interim Distribution Order and the transactions contemplated thereunder (or, to the extent such relief has already been granted in response to the Provisional Relief Motion, extend such relief pursuant to Bankruptcy Code Section 1521(a)(6));

(iv) authorizing the Petitioner, as provided in the Interim Distribution Order and any further orders of the Canadian Court issued in furtherance of the Liquidation Order or the Liquidation Plan, to supervise the administration, realization, and distribution of the Company's assets within the territorial jurisdiction of the United States and directing Citi NY and all other entities to take any and all lawful actions necessary to give effect in the United States to such further orders; and

(v) such other and further relief as this Court may deem just and proper.

38. The Petitioner believes that the Canadian Proceeding, with the assistance of this Court, offers the best means to facilitate the Company's liquidation.

39. The Canadian Court has entrusted the Petitioner with overseeing the realization of the assets of the Company and causing distributions to be made to creditors and other stakeholders on behalf of the Company. Indeed, the Company has assets maintained by entities in the United States in the form of the ADRs, and the distribution to stakeholders in accordance with the Liquidation Plan cannot be completed until Citi NY, which acts as transfer agent for the ADRs in the United States, has received a United States court order confirming that the Interim Distribution Order is enforceable in the United States. As a result, the Petitioner requires this Court's assistance to discharge its duties and responsibilities. Absent this Court's assistance, there is significant risk that the Petitioner will not be able to fully administer the Company's assets, to the detriment of stakeholders.

40. In particular, the value of the ADRs, which are publicly traded, may be subject to potential market price fluctuations that cannot be predicted. Indeed, as of the date of the Liquidation Order, each ADR was trading at $7.95. As of February 1, 2021, each ADR was

trading at $13.37. The shareholders who are the parties with the economic interest in the ADRs should be at liberty to trade the ADRs as they wish.

41.   Pursuant to the Provisional Relief Motion, the Petitioner has requested an order enforcing the Interim Distribution Order in the United States, and directing Citi NY and all other entities to take any and all lawful actions necessary to give effect to the Interim Distribution Order and the transactions contemplated thereunder. Assuming the Provisional Relief Motion is granted, the Company, at the direction of the Petitioner, will be able to make an interim distribution of the ADRs in accordance with the Interim Distribution Order. However, the Company will still have 312,812 ADRs that it may need to distribute (net of sales to fund liquidation costs) to the stakeholders in the future. Absent the relief requested in the Provisional Relief Motion and this Petition, the Petitioner will be unable to direct the distribution the ADRs to stakeholders who may wish to take steps to deal with their share of the ADRs in the public market.

## OTHER PROCEEDINGS INVOLVING THE COMPANY

42.   Pursuant to section 1515 of the Bankruptcy Code, a chapter 15 petition must "be accompanied by a statement identifying all foreign proceedings [as defined in the Bankruptcy Code] with respect to the debtor that are known to the foreign representative." 11 U.S.C. § 1515(c).

43.   Other than the Canadian Proceeding, the Petitioner is not aware of any other foreign proceeding involving the Company as a debtor. The Petitioner will promptly inform this Court if the Petitioner becomes aware of any such foreign proceeding, or if the Petitioner commences a foreign proceeding in another jurisdiction to aid in the administration of the Canadian Proceeding or the Company's liquidation.

**NOTICE**

44. Pursuant to section 1517(c) of the Bankruptcy Code, a petition for recognition shall be decided at the "earliest possible time." Accordingly, the Petitioner requests that this Court set the Recognition Hearing for March 1, 2021, or as soon thereafter as possible. In addition, the Petitioner has provided notice of the Petition to: (i) the Office of the United States Trustee; (ii) the Securities and Exchange Commission; (iii) all parties to litigation currently pending in the United States in which the Company is a party; and (iv) all parties required to be given notice under Bankruptcy Rule 2002 of which the Petitioner is aware. In light of the relief requested, the Petitioner submits that no other or further notice is necessary.

**CONCLUSION**

**WHEREFORE**, the Petitioner respectfully requests that this Court grant the relief requested herein and such other and further relief as may be just and proper.

[*Signature on following page*]

Dated: February 8, 2021
     New York, New York

*/s/ Eric Daucher*
_____
Eric Daucher
Francisco Vazquez
**NORTON ROSE FULBRIGHT US LLP**
1301 Avenue of the Americas
New York, New York 10019
Telephone:   (212) 318-3000
Facsimile:   (212) 318-3400
Email: eric.daucher@nortonrosefulbright.com
       francisco.vazquez@nortonrosefulbright.com

*Counsel to the Petitioner*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------- x
In re:                                                           :
                                                                 :   Chapter 15
                                                                 :
    NOVELION THERAPEUTICS INC.,                :
                                                                 :   Case No. 21-_____ (___)
                                                                 :
    Debtor in a Foreign Proceeding.             :
---------------------------------------------------------------- x

    I, Anthony Tillman, Senior Vice President of Alvarez Marsal Canada Inc., in its capacity as the liquidator and as the authorized foreign representative (in such capacity, the "Petitioner") of Novelion Therapeutics Inc. (the "Company"), pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury as follows:

    I have the full authority to verify this petition on behalf of the Company.

    I have read the foregoing petition, and I am informed and believe that the factual allegations contained therein are true and accurate.

    I declare under penalty of perjury under the laws of the United States of America that, to the best of my knowledge, information and belief, the foregoing is true and correct.

    Executed this 8th day of February 2021 in Vancouver, Canada

    */s/ Anthony Tillman*_____
    Anthony Tillman, Senior Vice President of Alvarez & Marsal Canada Inc., in its capacity as liquidator and authorized foreign representative of Novelion Therapeutics Inc.