Eric Daucher
Francisco Vazquez
**NORTON ROSE FULBRIGHT US LLP**
1301 Avenue of the Americas
New York, New York 10019
Telephone:    (212) 318-3000
Facsimile:    (212) 318-3400

*Counsel to the Petitioner*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------- x

In re:                                                           :    Chapter 15
                                                                 :
    NOVELION THERAPEUTICS INC.,                                  :    Case No. 21-10245 (MEW)
                                                                 :
        Debtor in a Foreign Proceeding.                          :
                                                                 :
----------------------------------------------------------------- x

**MEMORANDUM OF LAW IN SUPPORT OF (A) PETITIONER'S**
**VERIFIED PETITION UNDER CHAPTER 15 FOR RECOGNITION OF**
**THE CANADIAN PROCEEDING AND REQUEST FOR RELATED**
**RELIEF, AND (B) MOTION FOR PROVISIONAL RELIEF**

Alvarez & Marsal Canada Inc., in its capacity as the court-appointed liquidator and duly authorized foreign representative (in such capacity, the "Petitioner"), as defined by section 101(24) of title 11 of the United States Code (the "Bankruptcy Code"), of Novelion Therapeutics Inc. ("Novelion" or the "Company"), through its United States counsel, Norton Rose Fulbright US LLP, respectfully submits this memorandum of law (the "Memorandum of Law") in support of (A) the *Petitioner's Verified Petition under Chapter 15 for Recognition of the Canadian Proceeding and Request for Related Relief*, filed contemporaneously herewith (the "Verified Petition"),[1] and (B) the *Petitioner's Motion for Provisional Relief Pursuant to Section 1519 of the*

---

[1]    Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to such terms in the Verified Petition.

*Bankruptcy Code* (the "Provisional Relief Motion"). In support thereof, the Petitioner respectfully states as follows:

## PRELIMINARY STATEMENT

1. The Company formerly operated as a British Columbia biopharmaceutical business dedicated to developing and commercializing treatments and therapies for individuals living with rare diseases. The Company is now in the final stages of a liquidation proceeding under the laws of British Columbia. The claims bar date established in the Canadian Proceeding has passed, and all creditor claims have been agreed and paid in full. All that remains is for the Company to distribute its remaining assets to shareholders in accordance with the governing BCBCA and complete a dissolution of the corporate entity.

2. The Company's remaining principal asset consists of 2,498,050 American Depositary Receipts (the "ADRs") of Amryt Pharma plc ("Amryt")—which are described in greater detail below—for which Citibank N.A., New York Branch ("Citi NY"), acts as depositary. A significant majority of those ADRs are, pursuant to an order already entered by the Canadian Court, required to be distributed to the Company's shareholders. To enable Citi NY to act on that order, however, recognition of the Canadian Proceeding, including enforcement of the Canadian Court's distribution order in the United States, is necessary. Accordingly, after discussion with Citi NY, the Petitioner commenced this Chapter 15 case and seeks an order substantially in the form of the proposed order annexed to the Verified Petition as **Exhibit A** (the "Proposed Order") granting recognition to the Canadian Proceeding. By separate motion, the Petitioner, on behalf of the Company, has requested an order from this Court facilitating the transactions contemplated by the Interim Distribution Order (as defined below). The Petitioner understands that Citi NY does not oppose the relief sought herein or in that separate motion.

3.      The Petitioner, as the foreign representative of the Company, commenced this Chapter 15 case by filing a petition (the "Petition") contemporaneously with, and accompanied by, all certifications, statements, lists, and documents required under Chapter 15 of the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). As set forth below and in (i) the *Declaration of Kieran Siddall in Support of (A) Petitioner's Verified Petition Under Chapter 15 for Recognition of the Canadian Proceeding and Request for Related Relief, and (B) Motion for Provisional Relief* (the "Siddall Declaration"), and (ii) Verified Petition, each of which was filed contemporaneously herewith:

(a)      a foreign proceeding for the Company was duly commenced in Canada;

(b)      the Company's head office and "nerve center" is located in the City of Vancouver, British Columbia, Canada;

(c)      the Company is eligible to be a debtor under section 109(a) of the Bankruptcy Code;

(d)      the Petitioner is duly authorized to serve as the Company's foreign representative and to petition for relief under Chapter 15 of the Bankruptcy Code in connection with the Canadian Proceeding pending in Canada; and

(e)      the Petitioner is entitled to the relief requested.

4.      On November 18, 2019, the Company commenced the Canadian Proceeding after determining that liquidation was in the best interest of the Company and its stakeholders, and obtaining approval of the requisite majority of its shareholders. Indeed, the Company concluded that liquidation was the only viable strategic option after the Aegerion Recapitalization (as discussed in detail in the Verified Petition) given that the Company had no material ongoing business operations or sources of revenue.

5.      Upon the Company's request, the Canadian Court issued an order dated January 9, 2020 (the "Liquidation Order"), among other things, approving the appointment of the Petitioner

as the liquidator of the Company. Pursuant to the Liquidation Order, the Petitioner was entrusted with the liquidation of the Company and granted all of the powers and authorities provided to a liquidator under the BCBCA. Moreover, pursuant to the Liquidation Order, the Canadian Court authorized the Petitioner to apply to any court for the "recognition of [the Liquidation Order] and for assistance in carrying out the terms of this Order." *See* Liquidation Order ¶ 32. Indeed, the Canadian Court expressly requested this Court's assistance with respect to the Liquidation Order and "to grant representative status" to the Petitioner. *See* Liquidation Order ¶ 31.

6.     As detailed in the Verified Petition and in the Proposed Order, the Petitioner requests all relief afforded automatically upon recognition of a foreign main proceeding pursuant to sections 1509 and 1520 of the Bankruptcy Code or, in the alternative, discretionary relief from this Court pursuant to section 1521 of the Bankruptcy Code, including confirming the Petitioner's authority to administer or realize and cause the distribution of the ADRs.

7.     The Petition satisfies all of the requirements set forth in section 1515 of the Bankruptcy Code. In addition, the Company is eligible to be a debtor under section 109(a) of the Bankruptcy Code because the Company has property in the United States in the form of $25,000 in a non-interest bearing client trust account with Citi Private Bank in New York.

8.     For the reasons described herein and in the Verified Petition, the Petitioner is entitled to entry of an order granting recognition to the Canadian Proceeding as a foreign main proceeding or, in the alternative, as a foreign nonmain proceeding, under Chapter 15 of the Bankruptcy Code, as well as related relief under sections 1507, 1509, and 1521 of the Bankruptcy Code.

9.     In addition, by the Provisional Relief Motion, the Petitioner seeks entry of an order granting provisional relief in the form of an order enforcing the Interim Distribution Order in the

United States, pending entry of the Proposed Order. For the reasons described herein, in the Provisional Relief Motion and in the Verified Petition, the Petitioner is entitled to such provisional relief under section 1519 of the Bankruptcy Code.

## FACTS

10.    The Court is respectfully referred to the Verified Petition, which contains the relevant facts, all of which are incorporated herein by reference.

## JURISDICTION AND VENUE

11.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, dated January 31, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P).

12.    Venue is properly located in this District pursuant to 28 U.S.C. § 1410.

## ARGUMENT

### I.    The Company is Eligible under Section 109 of the Bankruptcy Code

13.    The United States Court of Appeals for the Second Circuit has held that the requirements of section 109(a) of the Bankruptcy Code apply in Chapter 15 cases. *See Drawbridge Special Opportunities Fund LP v. Barnet (In re Barnet)*, 737 F.3d 238, 247 (2d Cir. 2013) ("Section 109 . . . applies 'in a case under chapter 15.'"). Section 109(a) states, in relevant part, that "only a person that resides or has a domicile, a place of business, or property in the United States . . . may be a debtor under this title." 11 U.S.C. § 109(a). *See In re Octaviar Administration Pty Ltd.*, 511 B.R. 361, 373 (Bankr. S.D.N.Y. 2014) ("[T]he Court must abide by the plain meaning of the words in the statute. Section 109(a) says, simply, that the debtor must have property; it says nothing about the amount of such property."); *see also In re Suntech Power Holding Co. Ltd.*, 520 B.R. 399 (Bankr. S.D.N.Y. 2014) (same).

14.     Here, the debtor-eligibility requirements are satisfied with respect to the Company because, as of the date hereof, the Company has property in the United States. In particular, the Company has property in the United States in the form of an undrawn retainer in a bank account in this District. *See* Verified Petition ¶¶ 7, 12, 29, 36; *In re Octaviar*, 511 B.R. at 373-74 (noting that funds held in a retainer account satisfy section 109(a)).

## II.   This Case is Proper under Chapter 15

15.     Chapter 15 of the Bankruptcy Code provides a mechanism for a foreign representative to obtain, in the United States, recognition of, and assistance for, a foreign proceeding. *See* 11 U.S.C. § 1501(b)(l). Chapter 15 recognition shall be granted if: (a) recognition is sought for a "foreign proceeding" that qualifies as either "foreign main" or "foreign nonmain"; (b) recognition is sought by a "foreign representative"; and (c) the Chapter 15 petition meets certain procedural requirements. *See* 11 U.S.C. § 1517(a). The legislative history to Chapter 15 provides that:

> The decision to grant recognition is not dependent upon any findings about the nature of the foreign proceedings of the sort previously mandated by section 304(c) of the Bankruptcy Code. The requirements of [section 1517], which incorporates the definitions in section 1502 and sections 101(23) and (24), are all that must be fulfilled to attain recognition.

H.R. REP. 109-31, pt. 1 (2005). Thus, recognition under sections 1517(a) and (b) of the Bankruptcy Code is mandatory where, as here, a Chapter 15 petition meets the statutory requirements. *See In re Millard*, 501 B.R. 644, 651 (Bankr. S.D.N.Y. 2013) (stating that section 1517 provides a "'statutory mandate' that recognition be granted upon compliance with the requirements of section 1517(a)(1), (2) and (3)") (citing *Lavie v. Ran (In re Ran)*, 607 F.3d 1017, 1021 (5th Cir. 2010)).

A.     The Canadian Proceeding is a Foreign Proceeding

16.     The Canadian Proceeding is a foreign proceeding entitled to recognition under Chapter 15 of the Bankruptcy Code.

17.     A foreign proceeding has seven elements:

> (i) [the existence of] a proceeding; (ii) that is either judicial or administrative; (iii) that is collective in nature; (iv) that is in a foreign country; (v) that is authorized or conducted under a law related to insolvency or the adjustment of debts; (vi) in which the debtor's assets and affairs are subject to the control or supervision of a foreign court; and (vii) which proceeding is for the purpose of reorganization or liquidation.

*In re Ashapura Minechem Ltd.*, 480 B.R. 129, 136 (Bankr. S.D.N.Y. 2012) (quoting *In re Betcorp Ltd.*, 400 B.R. 266, 277 (Bankr. D. Nev. 2009)) (alteration in original); *see also In re ABC Learning Centres Ltd.*, 445 B.R. 318, 327 (Bankr. D. Del. 2010), *aff'd*, 728 F.3d 301 (3d Cir. 2013) (citation omitted); 11 U.S.C. § 101(23).   As set forth below, the Canadian Proceeding satisfies all of the elements.

i.     *The Canadian Proceeding is a "Proceeding"*

18.     For the purpose of Chapter 15 recognition, "the hallmark of a 'proceeding' is a statutory framework that contains a company's actions and that regulates the final distribution of a company's assets" and includes "acts and formalities set down in law so that courts, merchants and creditors can know them in advance, and apply them evenly in practice." *Flynn v. Wallace (In re Irish Bank Resolution Corp.)*, 538 B.R. 692, 697 (D. Del. 2015) (quoting *In re Betcorp Ltd.*, 400 B.R. 266, 278 (Bankr. D. Nev. 2009)).   Here, as described in the Verified Petition and the Siddall Declaration, the Canadian Proceeding is governed by British Columbia's *Business Corporations Act*, S.B.C. 2002 c. 57 (the "BCBCA").   The BCBCA, among other things, provides a framework for the liquidation or dissolution of a business incorporated thereunder, and regulates the final distribution of the subject company's assets in those scenarios. *See* Siddall Declaration

¶ 6 (citing BCBCA §§ 312-73). Because the Canadian Proceeding is subject to the BCBCA's statutory framework, it is a "proceeding" within the meaning of 11 U.S.C. § 101(23).

## ii. *The Canadian Proceeding is Judicial in Character*

19. Second, the judicial character of the Canadian Proceeding is readily apparent as it is pending before the Canadian Court, which plays a significant supervisory role in the liquidation. *See* Siddall Declaration ¶ 11. The Canadian Court may, upon application in respect of the Company's liquidation, issue any order it considers appropriate, including orders: (a) appointing one or more liquidators; (b) determining the validity of claims against the company; (c) approving the payment, satisfaction or compromise of any or all of the liabilities of the company and the retention of assets; (d) giving directions on any matter arising in the liquidation; and (e) confirming, reversing, or modifying any act or decision of the liquidator. *Id* (citing BCBCA § 325). Here, the Canadian Court has already issued the Liquidation Order (and approved the Liquidation Plan), the Claims Process Order, and the Interim Distribution Order. *See* Verified Petition ¶¶ 22, 27, Verified Petition Exhibits B-E. Given the foregoing, the Canadian Proceeding is judicial in character.

## iii. *The Canadian Proceeding is Collective in Nature*

20. Third, the Canadian Proceeding is collective in nature. A proceeding is "collective" if it "considers the rights and obligations of all creditors." *In re Ashapura Minechem Ltd.*, 480 B.R. at 136; *see also In re ABC Learning*, 445 B.R. at 328; "The 'collective proceeding' requirement is intended to limit access to Chapter 15 to proceedings which benefit creditors generally and to exclude proceedings which are for the benefit of a single creditor." 8 COLLIER ON BANKRUPTCY ¶ 1501.03[1] (16th ed. Rev. 2019). The Canadian Proceeding is collective because it addresses all of the liabilities and assets of the Company. *See* Siddall Declaration ¶ 7. Pursuant to the BCBCA's requirements governing a liquidation, only after ***all*** liabilities of the

Company have been paid are the company's remaining assets distributed to the Company's shareholders. *See id.* at ¶ 15. Finally, after all debts have been paid and all assets distributed, the Canadian Proceeding provides, subject to satisfaction of certain additional requirements, for the dissolution of the Company. *See id.* at ¶ 16. The Canadian Proceeding is thus a quintessential collective proceeding.

iv.     *The Canadian Proceeding is Pending in a Foreign Country*

21.     Fourth, the Canadian Proceeding is pending in Canada, which is a foreign country. The Canadian Court, which is overseeing the Canadian Proceeding, is located in Vancouver, British Columbia, Canada.

v.     *The Canadian Proceeding is Occurring under*
*a Law Relating to Insolvency or Adjustment of Debt*

22.     Fifth, the Canadian Proceeding was initiated under a law relating to insolvency or adjustment of debt. The Canadian Proceeding was commenced and is pending under the BCBCA. As described in the Siddall Declaration, the BCBCA addresses a broad range of topics related to corporations incorporated thereunder, from formation through liquidation and dissolution. *See* Siddall Declaration ¶ 6. Specifically, Part 10 of the BCBCA—which governs the Canadian Proceeding—provides mechanisms for the dissolution and liquidation of a company. This process involves, among other things, overseeing the realization of the company's assets and distributing those assets among creditors and, if all claims of creditors are satisfied and value remains, shareholders of the company, delivering notifications to creditors and, if directed by the court (as the Canadian Court did direct in this instance), carrying out a court-approved claims process. *See* Siddall Declaration ¶ 7. As such, the BCBCA qualifies as a law related to insolvency or the adjustment of debts. *See In re Ashapura Minechem Ltd.*, 480 B.R. at 138 ("the fact that several sub-parts of [the statute] . . . combined with the statutory ability . . . to shift among various forms

of dissolution given changing circumstances[ ] demonstrate[s] that the winding up is achieved under a law relating to insolvency or the adjustment of debts.") (internal quotation marks omitted) (citations omitted); *cf. In re Irish Bank Resolution Corporation Limited*, No. 13-12159 (CSS) 2014 WL 9953792 at *15 (Bankr D. Del. Apr. 30, 2014).

23.    Moreover, in addition to providing a framework for dissolution or liquidation of a business and the final distribution of a company's assets, the BCBCA also contains provisions for the adjustment of debt through an arrangement. These provisions are similar to the corresponding provisions of the *Canada Business Corporations Act,* R.S.C., 1985, c. C-44 (which regulates Canadian business corporations incorporated under that statute). *See* Siddall Declaration ¶ 6. That statute has regularly been recognized as a law related to insolvency or the adjustment of debt. *See, e.g., In re Mood Media Corp.*, 569 B.R. 556 (Bankr. S.D.N.Y. 2017) (granting recognition of a proceeding under the CBCA as a foreign main proceeding); *In re Catalyst Paper Corporation*, Case No. 16-1112419 (CSS), Dkt. No. 72 (Bankr. D. Del. Jan. 20, 2017) (same); *In re Tervita Corp.*, No. 16-12920 (Bankr. S.D.N.Y. Dec. 2, 2016) (same); *In re Mega Brands Inc.*, Case No. 10-10485 (CSS), Dkt. No. 39 (Bankr. D. Del. Mar. 23, 2010) (same); *In re Tembec Indus., Inc.*, Case No. 08-13435 (RDD), Dkt. No. 14 (Bankr. S.D.N.Y. Oct. 31, 2008) (same).

vi.    *The Canadian Proceeding Subjects the Company's Assets and Affairs to a Foreign Court's Control or Supervision*

24.    Sixth, the Canadian Proceeding subjects the Company's assets and affairs to a foreign court's control or supervision. As described above and in the Siddall Declaration, the Canadian Court may, upon application in respect of the Company's liquidation, issue any order it considers appropriate, including orders: (a) appointing one or more liquidators; (b) determining the validity of claims against the company; (c) approving the payment, satisfaction or compromise of any or all of the liabilities of the company and the retention of assets; (d) giving directions on

any matter arising in the liquidation; and (e) confirming, reversing, or modifying any act or decision of the liquidator. *Id*. Here, the Canadian Court has exercised that supervisory role through issuance of (i) the Liquidation Order, pursuant to which it approved the appointment of the Petitioner as liquidator of the Company and the Liquidation Plan, (ii) the Claims Process Order, and (iii) the Interim Distribution Order. *See* Verified Petition Exhibits B-E.

vii.    <em>The Canadian Proceeding is for the Purpose of Liquidation</em>

25.    Finally, the Canadian Proceeding is for the purpose of liquidating the Company. As described in the Verified Petition and the Siddall Declaration, the Canadian Proceeding is a liquidation, the terms of which have been approved by the Canadian Court. *See* Verified Petition Exhibits B-C.

26.    Based on the foregoing, this Court should find that the Canadian Proceeding satisfies Section 101 (23) of the Bankruptcy Code and is a "foreign proceeding" as required by Section 1517.

B.    <u>This Case Was Commenced by the Company's Foreign Representative</u>

27.    This Chapter 15 case was commenced by a duly authorized "foreign representative" within the meaning of section 101(24) of the Bankruptcy Code. That section provides as follows:

> The term "foreign representative" means a person or body, including a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding.

11 U.S.C. § 101(24).

28.    As reflected in both the Liquidation Order and the Interim Distribution Order, the Petitioner is authorized to act as the foreign representative of the Company and the Canadian Proceeding. *See* Verified Petition ¶ 5. The Liquidation Order expressly requests that foreign courts "***grant representative status to the Liquidator in any foreign proceeding***, or to assist the

[Company] and the Liquidator and their respective agents in carrying out the terms of this Order."
Verified Petition Exhibit B, ¶ 31 (emphasis added). Thus, the Petitioner has met the requirements
of Section 101(24) of the Bankruptcy Code. *Cf. In re SPhinX, Ltd.*, 351 B.R. 103, 116-17 (Bankr.
S.D.N.Y. 2006), *aff'd* 371 B.R. 10 (S.D.N.Y. 2007) (noting that the foreign representatives had
submitted a "copy of the Cayman Court's order appointing them to administer the Debtor's
winding up under the Companies Law and authorizing their commencement of these chapter 15
cases, thereby satisfying Bankruptcy Code § 101 (24)").

C.    This Chapter 15 Case was Properly Commenced

29.    The Petitioner filed the Petition in compliance with sections 1504, 1509(a), and
1515 of the Bankruptcy Code. The Petition meets the requirements of section 1515 and was
accompanied by: (a) a copy of the Liquidation Order evidencing the commencement of the
Canadian Proceeding and authorizing the Petitioner to be the foreign representative; (b) a statement
identifying all foreign proceedings known to the Petitioner with respect to the Company; (c) a
corporate ownership statement containing the information described in Bankruptcy Rule
1007(a)(4); and (d) (i) a list containing the names and addresses of all persons or bodies authorized
to administer foreign proceedings of the Company, (ii) all parties to litigation pending in the United
States, and (iii) all parties against whom provisional relief is sought pursuant to section 1519 of
the Bankruptcy Code. Because the Petitioner has satisfied the requirements set forth in section
1515 of the Bankruptcy Code, it has properly commenced this Chapter 15 case.

III.    **The Canadian Proceeding Should be Recognized as a Foreign Main Proceeding**

30.    This Court should recognize the Canadian Proceeding as a "foreign main
proceeding" as defined in section 1502(4) of the Bankruptcy Code. A foreign proceeding must be
recognized as a "foreign main proceeding" if it is pending in the country where the debtor has the
center of its main interests ("COMI"). *See* 11 U.S.C. § 1517(b)(l).

31.    While the Bankruptcy Code does not define "center of main interests," it does provide that "in the absence of evidence to the contrary, the debtor's registered office . . . is presumed to be the center of the debtor's main interests." 11 U.S.C. § 1516(c).  "Registered office' refers to the place of incorporation or the equivalent for an entity that is not a natural person."  8 COLLIER ON BANKRUPTCY ¶ 1516.03 (16th ed. Rev. 2019) (citing H.R. Rep. No. 109-31, 109th Cong., 1st Sess. 113 (2005)).  In this case, the Company's "registered office" is registered in Canada, where the Canadian Proceeding is pending.  Specifically the Company's registered office is located at Commerce Place, 400 Burrard Street, Suite 1680, Vancouver, British Columbia, Canada V6C 3A6.  *See* Verified Petition ¶ 14.

32.    The "registered office" presumption is rebuttable, but only when "the facts are more doubtful" and establish that "there is a separation between a corporation's jurisdiction of incorporation and its real seat."  Here, the "registered office" presumption should apply as there is no credible basis to allege, nor evidence to support, a COMI finding for the Company in any jurisdiction other than Canada.

33.    Moreover, even if the presumption that the Company's COMI is located at its registered office were to be disregarded, the overwhelming evidence establishes Canada as the Company's COMI. When considering whether the presumption that a debtor's COMI has or could be rebutted, many courts consider the analogous concept of an entity's "principal place of business" or "nerve center."  *See Morning Mist Holdings Ltd. v. Krys (In re Fairfield Sentry Ltd.)*, 714 F.3d 127, 138 n.10 (2d Cir. 2013).  Factors often considered by courts include (i) the location of the debtor's headquarters, (ii) the location of those who actually manage the debtor, (iii) the location of the debtor's creditors or a majority of the creditors who would be affected by the case,

(iv) the location of a debtor's assets, and (v) the jurisdiction whose law would apply to most disputes. *Id.* at 137; *In re SPhinX, Ltd.*, 351 B.R. 103, 117 (Bankr. S.D.N.Y. 2006).

34.     In this instance, the Company was founded in British Columbia, Canada, under the BCBCA. The Company is now being managed by the Liquidator, which is based in Canada. By the same token, it is effectively also headquartered in Canada. As described in detail in the Verified Petition, all creditor claims have been agreed and paid pursuant to the Liquidation Plan as implemented by the Petitioner from Canada. As such, the Company has no creditors, other than the Petitioner itself. To the extent there are any remaining disputes, those disputes are subject to a moratorium issued by the Canadian Court and will be resolved in Canada unless the Petitioner consents a different forum or the Canadian Court orders otherwise.

35.     In short, the Company was formed under the BCBCA and registered in British Columbia and is now being liquidated by the Petitioner pursuant to the BCBCA in the Company's home jurisdiction. Accordingly, the Company's COMI is Canada and the Canadian Proceeding is a "foreign main proceeding" with respect to the Company under section 1517(b)(1) of the Bankruptcy Code.[2]

## IV.     The Requested Relief Should be Granted

36.     As set forth below, certain of the requested relief by the Petitioner is automatically available under section 1520 of the Bankruptcy Code, which provides for automatic relief upon recognition of a foreign main proceeding. *See* 11 U.S.C. § 1520. Other portions of the requested

---

[2]   In the unlikely event that this Court concludes that the Company does not have its COMI in Canada, the Petitioner submits, that, in the alternative, the Canadian Proceeding should be recognized as a "foreign nonmain proceeding," and that discretionary relief should be granted under section 1521 of the Bankruptcy Code.

relief are available under section 1521 of the Bankruptcy Code,[3] which provide this Court with discretion to grant additional relief upon recognition of a foreign proceeding. *See* 11 U.S.C. § 1521.[4]

        A.       <u>The Petitioner is Entitled to Relief under Section 1520</u>

        37.       An order recognizing a foreign proceeding shall be entered if all of the requirements for recognition have been met. *See* 11 U.S.C. § 1517. As set forth above: (i) the Company is eligible to be a debtor pursuant to section 109(a) of the Bankruptcy Code; (ii) the Canadian Proceeding is a foreign proceeding; (iii) the Petitioner is the Company's foreign representative; and (iv) the Petition satisfies the requirements of section 1515 of the Bankruptcy Code. Therefore, this Court should enter an order recognizing the Canadian Proceeding as to the Company as a foreign main proceeding. Upon recognition of a foreign main proceeding, certain relief is

---

[3]    Section 1521(a) provides that, upon recognition of a foreign main proceeding or foreign nonmain proceeding and at the request of the foreign representative, a court may grant "any appropriate relief" necessary to effectuate the purpose of Chapter 15 and to protect the assets of the debtor or the interest of the creditors, including "extending relief granted under section 1519(a)."

[4]    If this Court were to conclude that any of the requested relief is not available as a matter of right under section 1520 or at this Court's discretion under section 1521, relief may be granted pursuant to section 1507 of the Bankruptcy Code. Section 1507 authorizes this Court to "provide additional assistance to a foreign representative under [the Bankruptcy Code] or under other laws of the United States." 11 U.S.C. § 1507. In deciding whether to extend relief under section 1507, this Court must consider principles of comity and determine whether the requested relief would reasonably assure: (a) just treatment of the Company's creditors and equity holders; (b) protection of the Company's United States creditors against prejudice and inconvenience in claim processing; (c) prevention of preferential or fraudulent dispositions of the Company's property; and (d) distribution of the Company's property substantially in accordance with the Bankruptcy Code's priority scheme. *See id*. "These provisions embody the protections that were previously contained in section 304 of the Bankruptcy Code . . . ." *In re Rede Energia S.A.*, 515 B.R. 69, 95 (Bankr. S.D.N.Y. 2014). Given the long history of Canadian proceedings being recognized and virtually identical relief being granted under former section 304, there can be no doubt that these criteria are satisfied. *See In re Davis,* 191 B.R. 577, 587 (Bankr. S.D.N.Y. 199) ("Courts in the United States uniformly grant comity to Canadian proceedings.").

automatically granted as a matter of right. *See In re Rede Energia S.A.*, 515 B.R. at 89 ("If a foreign case is recognized as a foreign main proceeding, as it was here, certain relief automatically goes into effect, pursuant to 11 U.S.C. § 1520 . . . ."); 11 U.S.C. § 1520.

      B.     The Petitioner is Entitled to the Relief Requested under Section 1521

    38.    Under section 1521 of the Bankruptcy Code, upon recognition of a foreign proceeding, at the request of the foreign representative, the Court may, "where necessary to effectuate the purpose of this chapter and to protect the assets of the debtor or the interests of creditors . . . grant any appropriate relief." 11 U.S.C. § 1521(a).[5]

    39.    Here, the Petitioner requests that the Court (a) enforce the Interim Distribution Order in the United States, and direct Citi NY and all other entities to take any and all lawful actions necessary to give effect to the Interim Distribution Order and the transactions contemplated thereunder or, to the extent such relief has already been granted in response to the Provisional Relief Motion, extend such relief pursuant to Bankruptcy Code Section 1521(a)(6)) and (b) confirm the authority of the Petitioner, as provided in the Interim Distribution Order and any further orders of the Canadian Court issued in furtherance of the Liquidation Order or the Liquidation Plan, to supervise the administration, realization, and distribution of the Company's assets within the territorial jurisdiction of the United States, including directing Citi NY and all other entities to take any and all lawful actions necessary to give effect in the United States to such further orders. Enforcement of the Interim Distribution Order and any further orders issued by the

---

[5] In addition, section 105(a) of the Bankruptcy Code empowers the court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title" which, in a Chapter 15 case, include the purposes set forth in section 1501 of the Bankruptcy Code including fostering cooperation, greater legal certainty, fair and efficient administration, maximization of stakeholder value, and the rescue of financially distressed businesses in the context of cross-border insolvency cases. 11 U.S.C. § 105(a), 1501(a)(1).

Canadian Court in furtherance of the Liquidation Order or the Liquidation Plan serves the purposes of Chapter 15 and the Canadian Proceeding.

40.    To exercise its discretionary powers under section 1521, the Court must ensure that "the interests of the creditors and other interested entities, including the debtor, are sufficiently protected." 11 U.S.C. § 1522(a); *see In re Grant Forest Products, Inc.*, 440 B.R. 616, 621 (Bankr. D. Del. 2010) (noting that "broad power" to grant section 1521 relief is subject to 1522). Relief under section 1521 will not be permitted if "it is shown that the foreign proceeding is seriously and unjustifiably injuring United States creditors." H.Rep. No. 109-31, Pt. 1, at 116; *see In re Energy Coal S.P.A.*, 582 B.R. 619, 627 (Bankr. D. Del. 2018) (noting that under section 1522 "the court can place conditions on the granting of relief under §1521"). A determination of sufficient protection requires a balancing of the respective parties' interests. *CT Inv. Mgmt. Co. v. Cozumel Caribe, S.A. de C.V.*, 482 B.R. 96, 108 (Bankr. S.D.N.Y. 2012); *see In Toft*, 453 B.R. 186, 196 n.11 (Bankr. S.D.N.Y. 2011) ("[A] court should tailor balancing the interest of the foreign representative and those affected by the relief.").

41.    Here, the balance of interests weighs in favor of granting the relief requested. The Canadian Court has entrusted the Petitioner with overseeing the realization of the assets of the Company and causing distributions to be made to creditors on behalf of the Company. *See* Verified Petition ¶ 39. At this stage, the claims of *all* creditors have been agreed and fully paid—there are no remaining United States creditors whose interests could be injured. *See* Verified Petition ¶ 27. In accordance with the BCBCA and the Liquidation Order, the remainder of the Company's assets are to be distributed to the Company's shareholders. *See* Siddall Declaration ¶ 15 (citing BCBCA § 330). Thus, the Company's remaining stakeholders whose interests should be considered by the Court are the shareholders.

42.    The shareholders' interests are fully aligned with the relief sought by the Petitioner. The Company's primary remaining asset is the Amryt Equity in the form of the ADRs. *See* Verified Petition ¶ 28. The Petitioner expects that any value available to shareholders of the Company will consist almost entirely of the Amryt Equity or net proceeds therefrom, net of sales of the Amryt Equity that are necessary to fund the Company's liabilities and cover its expenses, including expenses related to the liquidation. *See id.* Through the Interim Distribution Order, the Canadian Court authorized the Petitioner to make an interim distribution of approximately 2.185 million of the ADRs (approximately 84.5% of the ADRs) to shareholders. *See id.* at ¶ 32.

43.    However, intermediaries in the US that are involved in the distribution process have raised questions regarding the enforceability of the Interim Distribution Order in the US and require confirmation of such enforceability.  As a result, the Petitioner requires this Court's assistance to discharge its duties and responsibilities.  Absent this Court's assistance, there is significant risk that the Petitioner will not be able to fully administer the Company's assets, to the detriment of stakeholders.  In particular, the value of the ADRs, which are publicly traded, is subject to market fluctuations.  Enforcement of the Initial Distribution Order, which will allow the ADRs to be distributed promptly after such enforcement, will thus reduce the uncertainty faced by the Company's remaining stakeholders. *See* Verified Petition ¶ 39.

44.    Moreover, after completion of the distributions contemplated by the Interim Distribution Order, the Company will still possess a material number of ADRs that the Petitioner will need to distribute (net of costs) to the stakeholders in the future. Absent authorization for the Petitioner to make future distributions in accordance with further orders of the Canadian Court and to direct Citi NY and all other entities to comply with such further distribution orders, the Petitioner

will be unable to timely distribute the ADRs—which may be subject to future fluctuations in market price—to stakeholders.

45.    No stakeholder would benefit from such a result.  Indeed, the Petitioner is unaware of any stakeholder that opposes the relief sought herein and specifically understands that Citi NY does not oppose such relief.  To the extent any stakeholder might oppose further distribution orders issued in the Canadian Proceeding, they would have an opportunity to appear in and oppose such orders before the Canadian Court.  *See* Siddall Declaration ¶ 11.  Given the robust and fair procedural protections afforded in proceedings before Canadian courts, there is no reason to believe that any stakeholders would be unduly prejudiced in such proceedings.  *See In re Metcalfe & Mansfield Alternative Invs.*, 421 B.R. 685, 698 (Bankr. S.D.N.Y. 2010) (finding that Canada is a sister common law jurisdiction with procedures akin to our own, and thus there is no need to be concerned over the adequacy of the procedural safeguards of Canadian proceedings).  Any conceivable prejudice caused by the discretionary relief requested is thus extremely limited.  Accordingly, the balance of harms tips in favor of granting the requested discretionary relief.

## V.    The Provisional Relief Requested in the Provisional Relief Motion Pursuant to Section 1519 of the Bankruptcy Code is Appropriate

46.    Pursuant to the Provisional Relief Motion filed contemporaneously herewith, the Petitioner also seeks entry of an order immediately enforcing Interim Distribution Order in the United States and authority to direct Citi NY and all other entities to take any and all lawful actions necessary to give effect to the Interim Distribution Order and the transactions contemplated thereunder.

47.    As noted above, enforcement of the Interim Distribution Order is necessary to carry out the central remaining purpose of the Liquidation:  distribution of the Company's remaining assets to the Company's shareholders.

A.      Provisional Relief is Authorized by Sections 1519(a)(3), 1521(a)(7) and 105(a)

48.      Section 1519(a)(3) of the Bankruptcy Code authorizes the Court to grant, on a

provisional basis, any relief available pursuant to section 1521(a)(7).  Section 1521(a)(7) provides

that the Court may grant a foreign representative any relief available to a trustee, subject to certain

exceptions that are not applicable in this case.  Authorization to make distributions of a debtor's

assets, and corresponding direction for distribution agents and similar parties to take all steps

necessary or advisable to facilitate such distributions, is an essential feature of the Bankruptcy

Code that clearly falls within this provision.[6]  *See, e.g.,* 11 U.S.C. §§ 726, 1123.

B.      Provisional Relief is Necessary to Prevent
        Irreparable Harm and is Consistent with Public Interest

49.      The relief available under section 1519 of the Bankruptcy Code is available

pursuant to "the standards, procedures, and limitations applicable to an injunction."   11 U.S.C.

§ 1519(e).  In this District, injunctive relief is appropriate where: (i) there is a likelihood of success

(i.e., obtaining Chapter 15 recognition); (ii) there is a risk of irreparable harm in the absence of

relief; (iii) the balance of harms tips in favor of the moving party; and (iv) the public interest

weighs in favor of an injunction."   *See Lyondell Chem. Co. v. Centerpoint Energy Gas Servs. (In

re Lyondell Chem. Co.)*, 402 B.R. 571, 588 (Bankr. S.D.N.Y. 2009) (citing *Calpine Corp. v. Nev.

Power Co. (In re Calpine Corp.)*, 354 B.R. 45 (Bankr. S.D.N.Y. 2006), *aff'd* 365 B.R. 401

(S.D.N.Y. 2007)).  In considering whether to grant relief, courts take a "flexible approach and no

one factor is determinative." *Calpine Corp. v. Nev. Power Co. (In re Calpine Corp.)*, 365 B.R.

401, 409 (S.D.N.Y. 2007) (internal citations omitted) (citing *Haw. Structural Ironworkers Pension*

---

[6]      In addition, section 105(a) of the Bankruptcy Code further allows the Court to "issue any
         order . . . necessary or appropriate to carry out the provisions of [title 11]." 11 U.S.C. § 105(a).

*Trust Fund v. Calpine Corp.*, No. 06 CIV. 5358 (PKC), 2006 WL 3755175, at *4 (S.D.N.Y. Dec.

20, 2006)).  All four factors weigh in favor of relief here.

        i.      *There is a Substantial Likelihood of Recognition of the*
                  *Canadian Proceeding as a Foreign Main Proceeding*

      50.     As set forth above, the Petitioner has presented a compelling case for recognition

of the Canadian Proceeding as a foreign main proceeding.  Moreover, there is little doubt that the

Petitioner is a "foreign representative" as that term is defined in the Bankruptcy Code.  Finally,

this Chapter 15 case was duly and properly commenced by filing the Petition accompanied by all

fees, documents, and information required by the Bankruptcy Code and the Bankruptcy Rules.

Moreover, this Court regularly grants Chapter 15 recognition to proceedings pending under

Canadian corporate laws.  Based on the foregoing, there is a high likelihood that the Canadian

Proceeding will be recognized as a foreign main proceeding.

        ii.     *The Company's Stakeholders May* Suffer
                  *Irreparable Harm Absent Provisional Relief.*

      51.     As described above and in the Verified Petition, enforcement of the Interim

Distribution Order in the United States has become a necessary precondition to distributing the

great majority of the Company's remaining assets to the Company's stakeholders as contemplated

by the Liquidation Order and the Liquidation Plan.  In the meantime, the value of those assets—

which are publicly traded securities—may be subject to continued market fluctuations.  If the

Petitioner cannot obtain the relief necessary to make prompt distributions, through no fault of the

Petitioner or the Company, the Company's shareholders who are slated to receive the ADRs may

be harmed as they will not be able to make their own investment decisions with respect to the

ADRs.  Courts in this district have regularly recognized that disruptions to the distribution scheme

contemplated by a foreign proceeding constitutes "irreparable harm" that warrants injunctive

relief.  *See, e.g., Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B.*, 825 F.2d 709, 714 (2d Cir. 1987);

*In re Brierley*, 145 B.R. 151, 168 (Bankr. S.D.N.Y. 1992) ("Harm to the estate exists from the failure to grant injunctive relief in the form of disruption of an orderly determination of claims and the fair distribution . . . in a single case.") (internal quotation marks and citation omitted). Although the potential harm that relief is normally needed to prevent is a premature piecing out of an estate to some stakeholders, it is equally true that stakeholders are at risk if assets are not timely distributed while values are at risk. In either case, stakeholders face a potentially diminished asset pool with no potential source of recompense. Accordingly, the second factor weighs in favor of granting relief.

>        iii.    *Granting the Provisional Relief Will*
>                *Not Result in Greater Harm to Creditors*

52.    Consideration of the balance of harms further supports entry of the Provisional Order as requested herein. As noted above, the Company has no creditors that could be harmed. Nor will any other party be harmed. The Company's remaining stakeholders—its shareholders— presumably want the Petitioner to make the distributions contemplated by the Interim Distribution Order as quickly as possible. As evidenced by the Provisional Relief Motion and the Verified Petition, the Petitioner intends to make those distributions as soon as it is permitted to do so. Finally, the Petitioner understands that Citi NY does not oppose any of the relief sought by the Provisional Relief Motion—it simply wants U.S. court confirmation that the Interim Distribution Order is enforceable here. In contrast, and as noted above, the orderly distribution process contemplated by the Canadian Proceeding and, by extension, the beneficiaries of that distribution process, may be harmed by a delay in distributions. Accordingly, the third factor weighs in favor of granting relief.

iv.    *The Public Interest Favors Granting Provisional Relief*

53.    Finally, the requested provisional relief is consistent with the policy underlying bankruptcy law and is in the public interest because such relief will facilitate the efforts to preserve value for the ultimate benefit of the Company's stakeholders. *See In re ABC Learning Centers Ltd.*, 728 F.3d 301, 306 (3d Cir. 2013) (emphasizing that Chapter 15 serves the "universalism" approach to transnational bankruptcy, preferring that US courts act in aid of foreign proceedings); *In re Adelphia Commc'ns Corp.*, 368 B.R. 140, 284 (Bankr. S.D.N.Y. 2007) ("The public interest requires bankruptcy courts to consider the good of the case as a whole."). Moreover, granting the provisional relief also promotes cooperation between jurisdictions in this cross-border liquidation, an express purpose of Chapter 15 of the Bankruptcy Code. *See* 11 U.S.C. § 1501. Accordingly, all four injunctive relief factors weigh in favor of immediate enforcement of the Interim Distribution Order in the U.S.

## VI.    **Granting Recognition and Provisional Relief Would Not be Manifestly Contrary to the Public Policy of the United States**

54.    Section 1506 of the Bankruptcy Code provides that nothing in Chapter 15 requires this Court to take any action that would be manifestly contrary to the public policy of the United States. 11 U.S.C. § 1506. "[F]ederal courts in the United States have uniformly adopted the narrow application of the public policy exception." *In re OAS S.A.*, 533 B.R. at 103 (citing *Fairfield Sentry*, 714 F.3d at 139). The relief requested by the Petitioner is not manifestly contrary to, but rather consistent with, United States public policy. *Cornfeld v. Investors Overseas Servs., Ltd.*, 471 F. Supp. 1255, 1259 (S.D.N.Y. 1979) (recognizing that a Canadian liquidation proceeding would not violate the laws or public policy of New York or the United States).

55.    One of the fundamental goals of the Bankruptcy Code is the centralization of administration of a company's affairs and allowing for a uniform distribution of that company's

assets.. *See, e.g., In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 989 (2d Cir. 1990). Here, the Canadian Proceeding, through the Liquidation Order, the Liquidation Plan, and the Interim Distribution Order, provides for such a uniform distribution scheme. The relief sought from this Court is nothing more than implementation of those distributions in the United States.

56.    Accordingly, the relief requested would further the objectives of Chapter 15 by assisting the implementation of the Canadian Proceeding.

### CONCLUSION

For the foregoing reasons, the Petitioner respectfully requests that this Court grant the relief requested in the Verified Petition and the Provisional Relief Motion.

Dated: February 8, 2021
        New York, New York

*/s/ Eric Daucher*

Eric Daucher
Francisco Vazquez
**NORTON ROSE FULBRIGHT US LLP**
1301 Avenue of the Americas
New York, New York 10019
Telephone:     (212) 318-3000
Facsimile:     (212) 318-3400
Email:  eric.daucher@nortonrosefulbright.com
          francisco.vazqueaz@nortonrosefulbright.com

*Counsel to the Petitioner*