Eric Daucher
Francisco Vazquez
**NORTON ROSE FULBRIGHT US LLP**
1301 Avenue of the Americas
New York, New York 10019
Telephone:     (212) 318-3000
Facsimile:     (212) 318-3400

*Counsel to the Petitioner*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------------- x

In re:

      NOVELION THERAPEUTICS INC.,

          Debtor in a Foreign Proceeding.

--------------------------------------------------------------- x

    :  Chapter 15
    :
    :  Case No. 21-10245  (MEW)
    :

**DECLARATION OF KIERAN SIDDALL IN SUPPORT**
**OF (A) PETITIONER'S VERIFIED PETITION UNDER CHAPTER 15 FOR**
**RECOGNITION OF THE CANADIAN PROCEEDING AND REQUEST**
**FOR RELATED RELIEF, AND (B) MOTION FOR PROVISIONAL RELIEF**

        I, Kieran Siddall, to the best of my information and belief, state as follows:

      1.      I am over the age of 18 and, except as otherwise indicated, all facts set forth in this declaration are based upon my personal knowledge, my opinion based upon my experience and knowledge of the operations and financial condition of Novelion Therapeutics Inc. (the "Company") according to the information provided to me in that respect, my review of relevant documents (including the petition for recognition) or other information supplied to me. If I were called upon to testify, I could and would testify competently to the facts set forth herein. I am authorized to submit this declaration.

      2.      I am a Partner of the Canadian law firm Norton Rose Fulbright Canada LLP, with an office located at 510 West Georgia Street, Suite 1800, Vancouver, British Columbia, V6B 0M3, Canada. Norton Rose Fulbright Canada LLP is Canadian counsel to Alvarez & Marsal Canada

Inc. (the "Petitioner"), in its capacity as the liquidator of the Company. The Company is the subject of a liquidation proceeding under the *Business Corporations Act*, SBC 2002, c. C-57 (as amended, the "BCBCA") pending before the Supreme Court of British Columbia (the "Canadian Proceeding" and such court, the "Canadian Court").

3.    I submit this declaration in support of (A) *Petitioner's Verified Petition under Chapter 15 for Recognition of the Canadian Proceeding and Request for Related Relief* (the "Verified Petition"),[1] and (B) the *Petitioner's Motion for Provisional Relief Pursuant to Section 1519 of the Bankruptcy Code* (the "Provisional Relief Motion").

## I.    Professional Background and Qualifications

4.    I attended the University of British Columbia, where in 1991 I graduated with a Bachelor of Arts (B.A.) degree in Political Science. I then attended Cambridge University, where in 1994 I graduated with a Bachelor of Arts, with Honours, in Law. I was admitted to the Law Society of England and Wales in 1999, and the Bar of British Columbia in 2001.

5.    I have more than 15 years of experience in the field of Canadian insolvency and restructuring law, having represented secured and unsecured creditors, insolvent or financially challenged companies and individuals and insolvency practitioners in their capacity as receivers, trustees and monitors. I have made numerous appearances before the courts in British Columbia on bankruptcy and insolvency matters. I have also been a speaker at a number of financial restructuring industry events, and have authored a number of articles about Canadian insolvency law.

---

[1]    Unless otherwise defined in this Declaration, all capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Verified Petition.

## II.        Overview of a BCBCA Proceeding

### A.        Purpose and Application of the BCBCA

6.        The BCBCA is British Columbia's statute governing companies formed under that statute.  The BCBCA addresses a broad range of topics related to corporations incorporated thereunder, including a compromise between the company and its creditors.  *See* BCBCA sections 288-99 (addressing arrangements).  The BCBCA also provides a framework for the dissolution or liquidation of a company, and regulates the final distribution of the subject company's assets in those scenarios.  *See* BCBCA sections 312-373.  The provisions of the BCBCA relating to the adjustment of debt through an arrangement, and those relating to dissolution or liquidation of a company, are similar to the corresponding provisions of the *Canada Business Corporations Act,* R.S.C., 1985, c. C-44 (which regulates Canadian business corporations incorporated under that statute).

7.        Part 10 of the BCBCA provides mechanisms for the liquidation and dissolution of a company.  In general, a company can be dissolved voluntarily without a liquidation (if the corporation has no assets), or a company can be liquidated and dissolved either voluntarily or upon order of the Canadian Court.  Liquidation will entail the appointment of a liquidator that is entrusted with, among other things, overseeing the realization of the company's assets and distributing those assets among creditors and shareholders of the company, delivering notifications to creditors and, if directed by the court, carrying out a court-approved claims process.  In a court-ordered liquidation, the liquidator is appointed by court order and is an officer of the court.  Under the BCBCA, a person is not qualified to act as a liquidator unless they are licensed as a trustee under the *Bankruptcy and Insolvency Act* (Canada).  *See* BCBCA section 327.  The liquidation process is collective in that it will address all of the liabilities and assets of the subject company.

8.      A company can be liquidated voluntarily (without court order) if it is authorized to do so by special resolution, which is a resolution passed at a general meeting of the company by a "special majority" of shareholders as defined in the BCBCA. *See* BCBCA sections 1 and 319. A company may also be liquidated pursuant to a court order on application by the company, a shareholder of the company, a beneficial owner of shares of the company, or a creditor of the company, among others, if the court considers it just and equitable to do so.

9.      In a liquidation, after completion of distribution in satisfaction of claims of creditors and any distributions to shareholders, the liquidator is to proceed with a dissolution process described below.

B.      Procedure and Statutory Requirements For Liquidation

10.     Under the BCBCA, a company, a shareholder of the company, a beneficial owner of a share of the company, a director of the company or any other person, including a creditor of the company, whom the court considers to be an appropriate person to make the application, may apply for an order that the company be liquidated and dissolved. *See* BCBCA section 324. A Canadian Court may order the liquidation of a company if (a) an event occurs on the occurrence of which the memorandum or the articles of the company provide that the company is to be liquidated and dissolved, or (b) the court otherwise considers it just and equitable to do so.

11.     The Canadian Court can play a significant supervisory role in a liquidation under the BCBCA. In particular, pursuant to section 325 of the BCBCA, the Canadian Court, may upon an application in respect of a company in liquidation, issue "any order it considers appropriate," including orders (1) appointing one or more liquidators, (2) determining the validity of claims against the company, (3) approving the payment, satisfaction or compromise of any or all of the liabilities of the company and the retention of assets, (4) giving directions on any matter arising in

the liquidation, and (5) confirming, reversing, or modifying any act or decision of the liquidator. Creditors and other parties in interest may be heard on matters before the Canadian Court.

12.      Under the BCBCA, a liquidator will be entrusted with the management of the business and affairs of the company, except to the extent that the liquidator authorizes the directors and officers of the company to continue to exercise their powers. *See* BCBCA section 334. A company in liquidation continues to maintain its corporate status and powers. However, a company in liquidation must cease carrying on its business, "except to the extent that the liquidator considers necessary or advisable for the liquidation." *See* BCBCA section 340.

13.      A liquidator must take custody or control of a debtor's property, rights, and interests. In addition, among other things, the liquidator, subject to the provisions of Part 10 of the BCBCA, must use its own discretion in realizing the assets of the company or distributing those assets among the creditors and shareholders of the company. *See* BCBCA section 330.

14.      Under section 331 of the BCBCA, a liquidator must give notice of the liquidation to each known creditor. Such notice must disclose the amount that the liquidator has accepted as being owed to the creditor. Known creditors will have an opportunity to assert a claim in excess of the amount set forth in the notice, which the liquidator may contest. In addition to notice delivered to creditors, the liquidator must publish notice of the liquidation. *See* BCBCA section 331.

15.      After issuing the notices required by section 331 and paying ***all*** of the liquidating company's liabilities, including liquidation expenses (*e.g.*, liquidator's fees), the liquidator must distribute the company's remaining assets to the company's shareholders. *See* BCBCA section 330 (emphasis added).

16.     After the liquidator has made payment to all of the company's creditors and distributed the company's remaining assets, if any, to shareholders, the liquidator is required to prepare the final accounts of the liquidation reflecting, among other things, the disposition of assets. *See* BCBCA section 341. The liquidator must send a notice that such final accounts will be open for inspection to the debtor's shareholders. After the expiration of three months following the issuance of such notice, the liquidator must file an application for the dissolution of the debtor with the Registrar of Companies (the "Registrar"). *See* BCBCA section 343. In addition to the foregoing, a liquidator appointed by the Canadian Court must obtain an order from the Canadian Court approving the dissolution before the liquidator makes such an application. *See* BCBCA section 342. Subject to certain deferral provisions, the debtor will be dissolved either (i) one month after the application is filed with the Registrar, or (ii) where the liquidator was appointed by a court (a) when the application is filed with the Registrar, or (b) the date on which the dissolution is to take place as set forth in the application.

## III.     The Company and its BCBCA Proceeding

17.     The Company was a biopharmaceutical company that, through its subsidiary Aegerion Pharmaceuticals, Inc. ("Aegerion"), developed therapies for individuals living with rare diseases.

18.     On May 20, 2019 Aegerion and its subsidiary, Aegerion Pharmaceutical Holdings, Inc., filed voluntary petitions for relief under chapter 11 of title of the United States Code with the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"). On September 10, 2019, the Bankruptcy Court issued an order confirming Aegerion's chapter 11 plan (the "Chapter 11 Plan"). Pursuant to the Chapter 11 Plan, Amryt Pharma plc ("Amryt") acquired 100% of the outstanding equity interests in reorganized Aegerion, which became a

wholly-owned subsidiary of Amryt. Further, pursuant to the Chapter 11 Plan, the Company received equity in Amryt in the form of 2,807,975 Amryt American Depositary Receipts (the "ADRs"), for which Citibank N.A., New York Branch, acts as depository.[2]

19.    On November 18, 2019, the Company commenced the Canadian Proceeding by filing a petition with the Canadian Court pursuant to Section 325 of the BCBCA. As further described in the Verified Petition, the Company commenced the Canadian Proceeding to assist in the liquidation, wind-up, and dissolution of the Company.

20.    The Company's liquidation, including the Liquidation Plan (as defined below) and the Claims Process (as defined below), are subject to supervision by the Canadian Court, which serves as a forum for addressing matters in connection with the Company's liquidation.

A.    The Liquidation Order and Liquidation Plan

21.    After notice and a hearing, and pursuant to an order dated January 9, 2020 (the "Liquidation Order"), the Canadian Court approved the appointment of the Petitioner as the liquidator of the Company. *See* Verified Petition, Ex. B, ¶ 4. Pursuant to the Liquidation Order, the Petitioner was granted all of the powers and authorities provided to a liquidator under the BCBCA.

22.    As part of that same order, the Canadian Court also directed that the Company's liquidation be carried out in accordance with the terms of the Company's Plan of Liquidation and Distribution (the "Liquidation Plan"), pursuant to which the Petitioner, on behalf of the Company, was authorized to cause the Company to make distributions of its assets to creditors, and, after all

---

[2]    A more detailed description of the Company and the events leading to the filing of the Canadian Proceeding are set forth in the Verified Petition.

obligations of the Company and liquidation expenses are paid, distribution of any remaining assets or cash to shareholders ratably in accordance with their rights and interests in the Company. *See* Verified Petition, Ex. B, ¶ 3. The Liquidation Plan contemplates one or more distributions to the Company's shareholders.

23.     The Liquidation Plan further provides that the Petitioner, on behalf of the Company, will file an application for an order approving the wind-up and dissolution of the Company. Following receipt of the Canadian Court's order approving dissolution, the Petitioner, on behalf of the Company, is to file an application for dissolution of the Company with the Registrar. Upon dissolution of the Company, the Petitioner will be discharged as liquidator of the Company.

24.     The Liquidation Order also provides a broad moratorium staying all action against the Company or affecting the business or the property of the Company without the written consent of the Petitioner or leave of the Canadian Court. *See* Verified Petition, Ex. B, ¶ 8.

25.     Finally, through the Liquidation Order, the Canadian Court authorized the Petitioner to apply to any court for the "recognition of [the Liquidation Order] and for assistance in carrying out the terms of this Order." *See* Verified Petition, Ex. B, ¶ 32. Indeed, the Canadian Court expressly requested this Court's assistance with respect to the Liquidation Order and "to grant representative status" to the Petitioner. *See* Verified Petition, Ex. B, ¶ 31.

B.     The Claims Process Order

26.     Contemporaneously with entering the Liquidation Order and approving the Liquidation Plan, the Canadian Court entered an order (the "Claims Process Order") pursuant to which it approved a claims adjudication process (the "Claims Process"). The Claims Process established certain procedures, including notice to creditors, to solicit, determine and resolve any claims against the Company and its former directors and officers. In accordance with the Claims

Process, the Petitioner was entrusted with administering the Claims Process. Pursuant to the Claims Process, the deadline for creditors to file proofs of claim or dispute the amount of their claims as determined by the Petitioner, as liquidator, was May 29, 2020. It is my understanding that all claims against the Company have been agreed and fully paid. There are no pending objections to claims. Accordingly, it appears that the Claims Process has been duly concluded.

       C.      <u>The Interim Distribution Order</u>

       27.     In accordance with the BCBCA and the Liquidation Plan, and upon the Petitioner's application, the Canadian Court issued an order dated December 16, 2020 (the "<u>Interim Distribution Order</u>"), pursuant to which the Canadian Court authorized the Liquidator to cause the Company to make certain interim distributions in connection with the Canadian Proceeding. *See* Verified Petition, Ex. E, ¶ 2. In particular, the Liquidator was authorized to cause the Company to distribute a portion of the ADRs to the holders of common shares in the Company. *Id*. Like the Liquidation Order, the Interim Distribution Order contains provisions requesting this Court's assistance and authorization for the Liquidator to act as a foreign representative of the Company. *Id*. at ¶¶ 12, 13. It is my understanding that the Company has not made any such interim distributions.

## <u>CONCLUSION</u>

       I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed on this 8th day of February 2021
Vancouver, Canada

/s/ Kieran Siddall
Kieran Siddall
Norton Rose Fulbright Canada LLP
510 West Georgia Street, Suite 1800,
Vancouver, British Columbia
V6B 0M3, Canada